# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| RETALON, INC. §<br>   *Plaintiff*, §<br>      §<br>vs.       §<br>      §<br>GAMESTOP, INC. §<br>   *Defendants*. § | CIVIL ACTION NO. 4:23-cv-00746 |

## ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, Retalon, Inc. ("*Retalon* or *Plaintiff*"), and files this Original Complaint and Demand for Jury Trial against GameStop, Inc. ("*GameStop*" or "*Defendant*") and respectfully shows as follows:

### I. PARTIES

1. Plaintiff Retalon is a corporation formed under the laws of Province of Ontario, Canada with its principal place of business in Toronto, Canada.[1]

2. Defendant GameStop is a corporation formed under the laws of the State of Minnesota with its principal place of business located in Grapevine, Texas. GameStop may be served by serving its registered agent CT Corporation System at the registered address located at 1999 Bryan St., Ste 900, Dallas, TX 75201-3136.

### II. JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Defendant GameStop because its principal place of business is located in Texas, and it is considered a resident of the State of Texas.

---

[1] This transactions made the basis of this lawsuit were at all times in interstate and/or foreign commerce.

4. Pursuant to 28 U.S.C. § 1332(c)(1), Plaintiff Retalon is a citizen of Canada, a foreign state, and Defendant GameStop is a citizen of the State of Minnesota and the State of Texas. The amount in controversy, exclusive of interest and costs exceeds $75,000.00. This Court has subject matter jurisdiction over the claims against Defendant because there is diversity jurisdiction under 28 U.S.C. § 1332(a)(2) because this action involves a dispute between a citizen of a foreign state and a citizen of a State and the amount in controversy exceeds $75,000.00.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant GameStop is deemed a resident of this district pursuant to 28 U.S.C. § 1391(d) because its contacts would be sufficient to subject it to personal jurisdiction in this district if it were a separate state.

## IV  FACTUAL BACKGROUND

### A.  Retalon History

6. Retalon was founded in Toronto, Canada in 2002 by Dr. Mark Krupnik and Dr. Joseph Sheinis. It is an award-winning provider of advanced retail predictive analytics and artificial intelligence solutions for supply chain, planning, merchandising, inventory management, and pricing optimization. Retalon's success comes from the ability to combine leading artificial intelligence with extensive retail management experience. Its team is comprised of experts in applied mathematics, enterprise software development, and retail management.

### B.  Retalon and GameStop Enjoy a Six Year Successful Business Partnership

7. Retalon and GameStop entered into the Master Services & Subscription Agreement dated as of May 16, 2015 ("*MSSA*") and a Statement of Work dated as of May 16, 2016 ("*SOW*"). The MSA had an expiration date of May 15, 2019. True and correct copies of the MMSA and the SWA are attached hereto as **Exhibit A** and **Exhibit B**, respectively. Under the terms of the MSSA and the SOW, Retalon was to provide certain retail software solutions, a monthly subscription for

certain cloud based services (*i.e.*, software as a service "*SaaS*") and certain services relating to the implementation, on-going support and maintenance of such software. The MSSA had an expiration day of May 15, 2019. Section 3.3(a) of the MSSA provides that interest accrues at the rate of 5% per annum from the date that the invoice was due after Retalon notifies GameStop that such invoice is past due.

8. Both the MSSA and the SOW contain provisions for the acceptance of work performed by Retalon by means of a User Acceptance Test ("*UAT*"). Section 6.3 of the MSSA provides that GameStop had 30 days after delivery of work in a form which GameStop could use to test and to determine if a particular "Deliverable" met the applicable specifications for such work. Section 6.3 further provides that if GameStop does not accept or reject the Deliverable within 30 days that such Deliverable is deemed accepted except for latent defects. Under Section 9.3 of the MSSA, GameStop had the right to terminate any SOW on 90 days' notice. There was no right partially terminate a SOW under the MSSA.

9. Section 3(c) of the SOW modified the terms of the MSSA by providing that a client could terminate a Phase of work for any reason only "[p]rior to the completion of a successful [UAT]" by delivering to Retalon a notice of termination 30 days in advance. Section 3(d) further provides if a successful UAT for any Phase has been completed, such service could only be terminated in accordance with the MSSA with the result that once a UAT has been successfully completed a Phase or service can only be terminated if the entire SOW is terminated.

10. Retalon and GameStop reinstated and renewed the MSSA and amended and renewed the SOW by means of the MSSA and SOW Renewal Agreement dated as of August 14, 2020 ("*Renewal Agreement*") . A true and correct copy of the Renewal Agreement is attached hereto as **Exhibit C.** Pursuant to the Renewal Agreement, the term of the MSSA was extended for

three years until August 14, 2023 and included two customizations. an enhanced planning solution ("*Enhanced Planning*") to replace the original planning solution ("*Demand Planning*") and a new solution for promotions, markdown optimization solution ("*PPMO*"). The monthly subscription fee for the original inventory management solution ("*SIM*") in the amount of $82,400.00 remained unchanged. An additional fee for the Enhanced Planning solution in the amount of $35,935.00 was to replace the $7,187 monthly subscription fee for the Demand Planning that GameStop was already paying, once the UAT for the Enhanced Planning was completed. A new monthly subscription fee in the amount of $24,300.00 for the PPMO was added.[2] GameStop also agreed to pay a total of $745,148.00 for the implementation and integration services ("*Additional Services*").

11.     By Change Request dated January 28, 2021, GameStop and Retalon agreed that Retalon would add additional functionalities to the systems to what the parties were referring to as "GS Phase 4 Planning & GS Phase 4 PPMO" (the "*Phase 4 Change Request*"). A true and correct copy of the Phase 4 Change Request is attached hereto as **Exhibit D.** The Phase 4 Change Request provided in Section 1 that all subscription fees would begin to accrue upon a successful UAT for such solution (the MSSA, the SOW, the Renewal Agreement and Phase 4 Change Request are collectively referred to as the "*Agreement*").

12.     From the inception of the MSSA in May 2015 until the date that the Phase 4 Agreement was signed, Retalon and GameStop had enjoyed a highly successful business partnership. GameStop was the single biggest customer of Retalon, and Retalon was willing and did in fact accommodate GameStop on several occasions. For instance, GameStop requested in the Renewal Agreement that invoices for services completed in September and October 2020 would not be submitted until on or after November 1, 2020.

---

[2] The Renewal Agreement provided for a discount of the monthly subscription services that only applied if GameStop did not cancel before the end of the three year renewal period, so it is not applicable.

13.     GameStop at some point made the decision that the software would be hosted on Azure, a cloud based Microsoft product, as opposed to its own server ("*On-Prem*").  Cloud technologies offer greater flexibility as they can be scaled up on demand as required by the user.  Cloud technologies were also considered state of the art at that time.  Retalon performed the work necessary to move the software to Azure even though a formal change request was not signed based upon its past good working relationship with GameStop.

### C. GameStop Management Changes

14.     On September 21, 2020, Ryan Cohen, as the manager of RC Ventures, LLC ("*RCV*") purchased $6.5 million shares of GameStop Corp., the parent of GameStop, for approximately $38 million giving him a 9.98% ownership in the company.[3] Ryan Cohen is the co-founder of Chewy.com and is frequently described as an "investor activist." He reportedly advocated for GameStop to rival Amazon.com rival with respect to video games by selling a wider range of gaming-related merchandise and services online and to ship it to customers quickly.[4] By December 17, 2020, Cohen had increased his ownership in GameStop through RCV to 12.9%.[5] with a value of approximately $140 million. By that time, shares of GameStop had more than quadrupled since the summer and had surged as much as 29% to multi-year highs. [6]

15.     On January 11, 2021, GameStop announced that three new directors would join the board, including Cohen.[7]

---

[3] https://www.sec.gov/Archives/edgar/data/1326380/000101359420000699/rc13da2-091820.htm

[4] Market Insider, September 22, 2020, https://markets.businessinsider.com/news/stocks/gamestop-stock-price-chewy-investor-plans-amazon-rival-ecommerce-2020-9-1029612504?utm_medium=ingest&utm_source=markets.

[5] https://news.gamestop.com/static-files/89e3e0c1-e050-4511-887d-d1f9321703f8

[6] Markets Insider, December 22, 2020. https://markets.businessinsider.com/news/stocks/gamestop-stock-price-chewy-cofounder-ryan-cohen-activist-investment-stake-2020-12-1029915366?utm_medium=ingest&utm_source=markets

[7] https://www.globenewswire.com/news-release/2021/01/11/2156168/0/en/GameStop-Announces-Additional-Board-Refreshment-to-Accelerate-Transformation.html

16. By June 16, 2021, GameStop had engaged in what has been described as a "hiring frenzy" and hired 15 executives of Amazon including Matt Furlong[8], Chief Executive Office, Mike Recupero,[9] Chief Financial officer, Matt Francis, Chief Technology Officer[10] and Jenna Owens Chief Operating Officer and Executive Vice President who had bene hired in March 2021.[11]

17. In early May 2021, GameStop advised Retalon that it was going to change the cloud environment again. GameStop planned to move from the Azure cloud environment to an Amazon Web Services cloud environment ("AWS"), presumably the new management that had been hired from Amazon was more familiar with this environment and made this decision. This was only the beginning of the dramatic change in direction that GameStop would take due to the new management.

18. On May 31, 2021, the GameStop's Vice President of Information Technologies ("*IT Director*") sent an email to Mark Krupnik entitled "Next Steps/Path to Green".:

> I've asked our team internally to huddle on path to green activities… with budget being one of the toughest ones right now. It has become much bigger problem internally than even our last group discuss with Jonathan; there is significant executive scrutiny from new team around continual stretch in timelines, significant budget increases, etc. broadly (not a specific Retalon item). We need to ship value quickly and within budget constraints as much as possible.
>
> ***
>
> Right now, focused on trying to get us green and over the line to establish credibility with the new leaders here as quickly as possible.

He asked whether they could keep the multiple cloud environments.

19. It now appears that as discussed below, persons within GameStop made the decision that the way to "establish credibility" with the new leadership was by unilaterally

---

[8] https://news.gamestop.com/news-releases/news-release-details/gamestop-announces-appointments-chief-executive-officer-and-and
[9] *Id.*
[10] https://news.gamestop.com/news-releases/news-release-details/gamestop-appoints-chief-technology-officer
[11] https://news.gamestop.com/news-releases/news-release-details/gamestop-appoints-chief-operating-officer

attempting to modify the Agreement by creating a new and invented narrative for the purpose of avoiding payment of the subscription and other fees required under the Agreement.

### D. The UAT for PPMO Successfully Completed

20. The UAT for PPMO was successfully completed. GameStop signed off on the UAT Base Training for the PPMO on May 17, 2023. This was acknowledged in the May 27, 2021 Status Report-PPMO prepared by GameStop:

> Project Milestones:
> 1) Base UAT Completion / Sign-off (May 17)

This completion of the successful UAT for PPMO was also confirmed several times in a May 21, 2021 recorded Teams Meeting in which GameStop's Director, Pricing and the Senior Product Manager both acknowledged the successful UAT for PPMO. While they noted that GameStop was not fully utilizing it, the issues with utilization were due to issues on GameStop's end, not Retalon's. The Senior Product Manager also stated that the decision to shift to AWS had been announced internally on May 14, 2021 and had created more work for GameStop IT.

21. On June 11, 2021, the GameStop Product Manager sent an email to Mark Krupnik on which the IT Director and others were copied. In that email, she states:

> b. **CURRENT STATE** as of 6/11/21:
>    i. **AWS 1** completely stood up (PPMO module installed and validation that the business has access).
> - Azure has been disabled. No one can access it for use as of 6/11/21.

The only changes that GameStop identified that it wanted to PPMO were ones that would require a change request ("*CR*") because they were not in the original scope of work. The June 24, 2021

Status Report -PPMO prepared by GameStop states:

- Phase 1 - Base functionality / Initial delivery - **complete**
- Phase 2 - CR delivery / Remaining delivery
  - Items Identified through UAT / Training and
  - Items not delivered initially – note: CR Price Exports

Any claim by GameStop now that the UAT for PPMO was not successful is simply not true.

22. In fact, Retalon submitted monthly invoices for the PPMO SaaS fees: (i.) on May 17, 2021 for the May 2021 fee that was paid June 29, 2021; (ii.) on June 29, 2021 for June 2021 fee that was paid September 7, 2021; and (iii) on July 13, 2021 for July 2021 fee that was paid September 7, 2021. GameStop thereby again acknowledged that the UAT had been successful.

**E. GameStop Bleeds Money and Needs a Fix**

23. On Friday July 16, 2021, the IT Director emailed Mark Krupnik introducing him to Jenna Owens, the new Chief Operating Officer and requesting a meeting Monday or Tuesday of the next week because "Knowing things are moving fast and we need to get some decisions locked." Mr. Krupnik replied that he would be happy to participate in a meeting. The IT Director conceded in a reply on which he did not copy Ms. Owens that the GameStop business side "GME" need to accept responsibility for the delay:

> I also asked team to be clear that while we're building AWS environment, GME needs to own risk to delay for decision and to ask we not start performance testing, etc. until we can formally approve CR.

24. During the following meeting between Jenna Owens, the IT Director and Mark Krupnik and others (the "*July GME Meeting*"), GameStop explained that the business was changing direction to the online model and that GameStop no longer viewed PPMO as a priority. The IT Director said that the IT Department has recommended that GameStop cancel PPMO if GameStop does not know if it needs the solution. Clearly, the IT director was posturing about cancellation of PPMO in an effort to "establish credibility "with GME.  Under Section 3(c) of the

SOW, GameStop could not cancel PPMO because the UAT for PPMO had been completed. If GameStop had exercised the voluntary termination provision in Section 9.3 of the MSSA, it would have been required to cancel the entire Agreement because that provision only allowed cancellation of a SOW and there was only one SOW. Cancellation of the entire Agreement would mean that GameStop would lose access to SIM, the inventory management software, which was critical to GameStop's operations. Further, the subscription fees for PPMO and Enhanced Planning in the Renewal Agreement were tied to the subscription fees for SIM with the effect that even if the customizations in the Phase 4 Change Request could be cancelled, which they could not, the subscription fees in the Renewal Agreement could not be cancelled without cancellation of the entire SOW. When asked why GameStop would want to cancel PPMO, IT Director responded that GameStop is "bleeding money."[12]

25.    Ms. Owens further explained in that call that she was the new COO and was not sure what the business users needed and that she needed time to figure it out. She requested that PPMO be "paused" and the SaaS fees for PPMO and Enhanced Planning be frozen. She told Mr. Krupnik that he should check back with her in November of that year. Mr. Krupnik agreed because GameStop was Retalon's single biggest customer, and he felt that he really had no choice. Further, he agreed because the proposed agreement was limited to a pause in payments as far as he was concerned. There was no discussion of a modification of the Agreement, and he certainly did not agree to any modification. The "pause" only meant that there would be a temporary delay in the payment of monthly PPMO SaaS fee and in the increase in amount of the Enhanced Planning PPMO SaaS fee from the amount of the Demand Planning fee, not that GameStop was allowed to

---

[12] On June 9, 2021, GameStop reported that for first quarter 2021 that its losses narrowed to $66.8 million or $1.01 per share which was a decrease from the previous quarter. https://www.cnbc.com/2021/06/09/gamestop-gme-earnings-q1-2021.html

unilaterally cancel the fees or otherwise modify the terms of the Agreement.

26.     Finally, the world was still operating in the full throws of the COVID pandemic in which all services rendered pursuant to the Renewal Agreement were provided by Retalon virtually from Canada, and requests for deferrals of payment, not cancellations, were common in all industries. A short deferral of increased payment amount was certainly not out of the ordinary at that time. There was nothing in the July GME Meeting that put Retalon on notice that GameStop would be taking the position that it was not ultimately required to pay Retalon in accordance with the terms of the Agreement.

### F. GameStop Creates the Fiction of Phase 3+ for Enhanced Planning

27.     GameStop had a dilemma because it still desired certain significant material changes to the Demand Planning, but apparently did not want to pay for the changes or the increased monthly SaaS fee for Planning or the monthly subscription fee for PPMO as required under the Agreement.

28.     After the July GME Meeting, GameStop immediately began referring to the work left to be completed under the Agreement as "Phase 3+", although there had been no cancellation of Phase 4 (which would have been impossible without cancellation of the entire agreement) and no change order signed. GameStop also began referring to PPMO as "Paused."

### G. The UAT for Enhanced Planning Successfully Completed and/or Waived

29.     GameStop thereafter began referring to a "reduced scope of work," but the reduction was not significant and the additions to the Demand Planning were significant. The original Demand Planning scope included 20 attributes and supported one category level of attributes. The "reduced scope" included 237 metric planning metrics that were scaled down only ten from the originally planned 247 metrics in Phase 4. Once GameStop reduced the scope of work,

Retalon stopped working on items not required and did not bill for such items.

30.     By email dated July 30, 2023, the GameStop's Director of Software Engineering *("Software Director")* advised Retalon that "…there is confusion over the direction for Phase 3+". GameStop understood that its new requirements would be implemented on the current Planning that was in "PROD" and not the new version for Phase 4." Retalon immediately responded that the current version of the software for the Demand Planning could not be modified to deliver the planning functionality that GameStop was requesting. GameStop did not challenge Retalon's position at that time.

31.     During this time period, GameStop advised Retalon that it again desired to change the cloud environment in which it was operating. GameStop advised that it wished to move away from AWS and go back to utilization of its own servers, presumably as a cost saving measure although GameStop did not specify why it was changing the cloud environment for the third time that year.

32.     GameStop issued revised scope priorities for the Phase 3+ which included moving the solutions from AWS to On-Prem. The training for Enhanced Planning was successfully completed, and GameStop set a milestone of August 27, 2021 for the Enhanced Planning to "Go-Live".

33.     By email dated August 27, 2021, Retalon notified GameStop that all targets had been met and that Enhanced Planning had gone "live":

> Happy to pass along the 'all-clear' message, We're Live!
>
> High-level, actions completed out today went according to plan:

One of the milestones that was met was moving the database from AWS to On-Prem. The Software Director responded:

Thanks all, great work!

Effective September 2021, GameStop cancelled the weekly meetings with Retalon. GameStop requested no further work be done on Planning after September 2021. The last Status Report-GS Ph3+ Delivery prepared by GameStop dated September 2, 2021 reflected "Project Status: Green". As a result, a successful UAT of the Enhanced Planning occurred, and Retalon successfully performed every task that GameStop had requested. Alternatively, GameStop waived any such UAT or the UAT was deemed successful under the terms of the Agreement.

34. A year later, GameStop, by email dated August 10, 2022, sent a notice stating that it was exercising its right to voluntarily terminate any open SOW's on 90 days' notice pursuant to Section 9.3 of the MSSA making November 14, 2022 the effective date of the termination of the Agreement. From September 2021 until the effective date of the termination of the Agreement, GameStop had access to the Enhanced Planning software and the PPMO software whether it chose to use them or not.

**H. GameStop Fails to Pay Retalon**

35. There is still owing $95,750.00 by GameStop for the Enhanced Planning customizations and $93,217.00 for PPMO customizations pursuant to the Agreement which Retalon attempted to invoice through GameStop's Coupa system in August 2021. In addition, GameStop paid only three months of the PPMO and Enhanced Planning SaaS fees totaling $60,324 per month for May, June and July 2021. GameStop owes additional PPMO and Enhanced Planning subscription fees for the period August 2021 through November 2022. While Retalon attempted to submit invoices for these amounts, GameStop did not provide Retalon with the necessary GameStop purchase order number that would have allowed them to be entered into the system. Instead, GameStop made only partial payments of the Enhanced Planning subscriptions

fees by paying the amount of the monthly $7187 subscription fee for Demand Planning. There is now due and owing monthly subscription PPMO fees and the difference of Enhanced Planning fees in the total amount of $795,720.00 for the fifteen month period.

36. After GameStop terminated the monthly meetings in September 2021 and did not ask for any additional work to be performed by Retalon on Phase 4, Retalon made numerous attempts to contact GameStop about the past due amounts. Mark Krupnik attempted to contact Jenna Owen in November 2021 as she instructed him to do. However, she was terminated by GameStop only seven months after she started on October 25, 2021.[13] He thereafter made numerous attempts to contact various individuals at GameStop but was never given a definitive answer as to why Retalon had not been paid.

37. GameStop apparently takes position now that the parties agreed that the payment terms of the Agreement were modified during the July GME meeting. However, there was no discussion whatsoever regarding a reduction of fees at that meeting, only a "pause" in payment of the increased subscription fees. Further, Section 2.3 of the MSSA governs changes to the agreement and requires that all changes be in writing and signed by the parties. Retalon provided substantial services to GameStop, including but not limited to those associated with the various changes to the cloud environments for which it was not compensated. GameStop has repeatedly taken the position that Retalon is not entitled to compensation for any services not covered by a signed change request. There was no signed changed request that eliminated the subscription fees under the Agreement or that decreased the amount of customization fees that GameStop owes. GameStop cannot have it both ways.

---

[13] GameStop Corp. October 29, 2021 Form 8-K, https://news.gamestop.com/node/19516/html

38. Retalon alleges on information that there has been substantial turnover with GameStop management. GameStop management apparently takes the position today that it received insufficient value from the services provided by Retalon to GameStop. However, GameStop's management's subjective belief as to the value of the services rendered by Retalon is immaterial. Most importantly, GameStop is not entitled to unilaterally change the terms of an agreement to which it is bound simply because its management has made a change in the direction of its business plan.

## V. CAUSES OF ACTION

### CAUSE OF ACTION I: BREACH OF CONTRACT

39. The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

40. All conditions precedent to bringing a cause of action for breach of the Agreement have been performed, waived or GameStop has prevented their completion.

41. The Agreement constitutes a binding and enforceable agreement between Retalon and GameStop.

42. GameStop materially breached the Agreement by failing to pay the amounts owed when due.

43. As a direct result thereof, Retalon has been damaged in the amount of $984,687.00 representing the unpaid customization amounts owed for PPMO and Enhanced Planning and the unpaid subscription SaaS fees for PPMO and Planning for which Retalon hereby sues.

### CAUSE OF ACTION II: QUANTUM MERUIT

44. Alternatively, or in addition, Retalon asserts this claim for quantum meruit.

45. The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

46. Retalon provided services to GameStop for the customizations of PPMO and Enhanced Planning and made the subscription services for PPMO and Enhanced Planning available to GameStop with the expectation that GameStop would pay for them, and GameStop should have known that Retalon expected to be paid for such services.

47. As a direct result thereof, Retalon has been damaged in an amount to be determined at trial for which it hereby sues.

## VI. CLAIM FOR ATTORNEY'S FEES

48. The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

49. Retalon gave written notice to GameStop of its claims more than 30 days before filing suit.

50. As a result, Retalon is entitled to an award of its reasonable and necessary attorney's fees for bringing this action.

## VII. DEMAND FOR JURY TRIAL

51. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Retalon hereby demands a trial by jury as to all issues.

## VIII. PRAYER

WHEREFORE, Plaintiff Retalon respectfully request that Defendant GameStop be cited to appear and answer herein, and that upon final hearing, Plaintiff be awarded judgment against Defendant GameStop as follows:

1. Actual damages in the amount of $984,687.00 or as to be determined at trial;

2. Pre- and post-judgment interest on the total sum awarded herein at the highest legal rates;

3. Plaintiffs' reasonable and necessary attorneys' fees;

4. Court costs; and

5. Such additional and further relief to which Plaintiff is justly entitled.

SIGNED and FILED this 18th day of July 2023.

                                             Respectfully submitted,

                                    By:  */s/ Lisa A. Powell*
                                            Lisa A. Powell
                                            TX State Bar No.
                                            **FisherBroyles LLP**
                                            2925 Richmond Ave., Suite 1200
                                            Houston, TX 77098
                                            Telephone: 713.955.3302
                                            lisa.powell@fisherbroyles.com
                                            **ATTORNEYS FOR PLAINTIFF RETALON, INC.**